IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PENSION FUND OF THE EIGHTH DISTRICT ELECTRICAL PENSION FUND, and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 354,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>WASATCH FRONT ELECTRIC AND CONSTRUCTION, LLC, LARSEN ELECTRIC, LLC, SCOTT R. LARSEN, and LARSEN ELECTRIC OF NEVADA, LLC,<br><br>　　　　　Defendants. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Case No.  2:09-CV-0632<br><br>Judge Clark Waddoups |

## INTRODUCTION

Plaintiffs Trustees of the Eighth District Electrical Pension Fund ("Pension Fund") and International Brotherhood of Electrical Workers, Local 354 ("Local 354") bring this action to recover against Defendants Wasatch Front Electric and Construction, LLC ("WF Electric"), Larsen Electric, LLC, and Scott R. Larsen for allegedly failing to pay contributions, assessments and withdrawal liabilities, as required either under various collective bargaining agreements or as provided for under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Plaintiffs have also brought a fraudulent transfer claim against Larsen Electric of Nevada, LLC.

A bench trial was held from January 24 to January 27, 2012.  On March 29, 2012, the court heard closing trial arguments.  After hearing argument and reviewing the parties' proposed findings

of fact and conclusions of law, the court holds that Plaintiffs' First, Second and Third Claims[1] are barred against all Defendants under the doctrine of claim preclusion, sometimes also referred to as *res judicata,* by the order entered November 8, 2007 in *International Brotherhood of Electrical Workers, Local 354 v. Wasatch Electric and Construction* LLC, Case No. 2:05-cv-0955, Dkt. No. 68, dismissing that action on the merits and with prejudice (the "Prior Lawsuit").  Plaintiffs' Fifth Claim for Relief was bifurcated for trial.  In light of the court's ruling, the Plaintiffs are ordered to show cause why the Fifth Claim for Relief should not also be dismissed with prejudice.

## FINDINGS OF FACT

Because the court concludes that Plaintiffs' claims are barred by *res judicata*, the court makes findings of fact only to the extent necessary to resolve that issue.  The court makes no findings as to the underlying merits of the claims.  Facts that are referenced in the Conclusions of Law that are not stated separately in the Findings of Fact section are to be treated as findings of fact.

The Pension Fund is the collection agent for the Eighth District Electrical Pension Fund Annuity Plan, the Eighth District Electrical Benefit Fund, the National Electrical Benefit Fund, the Electrical Joint Apprenticeship and Training Committee Administration Fund, the National Electrical Contractor's Association Service Charge, the Labor-Management Cooperative Committee Fund, the Drug Free Workplace Management Fund, and the Local Retiree Fund (collectively the "Trust Funds").  The Trust Funds were created pursuant to ERISA, 29 U.S.C. § 1001 *et seq*. and Section 302 of the National Labor Relations Act, 29. U.S.C. § 186.  The Pension Fund alleges that it is bringing this action "to collect delinquent Trust Fund contributions in accordance with the terms and provisions of certain Collective Bargaining Agreements and Trust Agreements, pursuant to 29 U.S.C. § 1145, and to recover withdrawal liability pursuant to 29 U.S.C. Section 1381 et seq." (Dkt No. 205, ¶ 4.)

---

[1] Plaintiffs' Fourth Claim for Relief was previously dismissed. (Dkt No. 129).

Local 354 is a labor organization within the meaning of 29 U.S.C. Section 152(5), with its principal place of business located in Salt Lake County, Utah.  Local 354 represents union members in collective bargaining agreements with union electrical contractors operating and working within the State of Utah.

At all relevant times, WF Electric and Larsen Electric were organized as limited liability companies and doing business as electrical contractors licensed in the State of Utah.  By signing an assent agreement, WF Electric became a party to a 2003-2005 Inside Wireman Small Works Agreement (the "2003 Bargaining Agreement") providing certain rights and protections to its employees.  This agreement expired May 31, 2005.  Pursuant to its agreement, WF Electric remained bound by any subsequently approved labor agreement unless its assent was terminated by written notice to be given no later than January 1, 2005.  In 2005, a new Inside Wireman Agreement was consummated effective as of June 1, 2005 through May 31, 2007 (the "2005 Bargaining Agreement")  (2:05-cv-0955 Dkt. No. 1 at 3.)

Any obligation by WF Electric to make payments for benefits on behalf of covered employees to the Trust Funds represented by the Pension Plan arises under the 2003 and 2005 Bargaining Agreements.  (Tr. 44-48 and Plaintiffs Ex. 4, Arts VI, VII and VIII; Tr. 43-44 and Plaintiffs Ex. 3.)  These payments include payments to funds such as the health benefit fund, the pension benefit fund, the annuity fund, the apprenticeship fund and various other funds.  (Tr. 47.)

Throughout early 2005, Local 354 alleged that it became aware that an increasing amount of work traditionally performed by its bargaining unit members for WF Electric was being performed by employees of Larsen Electric.  Larsen Electric has denied that it was bound by the 2003 and 2005 Bargaining Agreements and asserts that it was not required to comply with their terms and conditions.

On June 6, 2005, WF Electric attempted to withdraw its voluntary recognition of Local 354 as the bargaining representative of its employees.  Local 354 argued that the withdrawal was untimely and ineffective and that WF Electric had therefore become bound by the 2005 Bargaining Agreement.  On November 18, 2005, Local 354 filed the Prior Lawsuit against WF Electric and Larsen Electric, asking the court (1) to declare "WF Electric and Larsen Electric to be alter ego companies for purposes of the Labor-Management Relations Act," (2) to declare "WF Electric and its alter ego Larsen Electric both to be parties to the prior and current collective bargaining agreements between Local 354 and NECA [National Electrical Contractors Association]," and (3) to enforce "the collective bargaining agreement by compelling defendants to proceed to arbitration over their violation of each and every term and condition of the collective bargaining agreement." (2:05-cv-955 Dkt. No. 1 at 1.)

Almost two years later, after lengthy pre-trial proceedings, including the court's denial of motions for summary judgment, the matter was set for a bench trial.   In response, on November 6, 2007, WF Electric, Larsen Electric, and Local 354 signed a Settlement Agreement and stipulated to dismissal of the Prior Lawsuit on the merits and with prejudice.  (2:05-cv-955 Dkt. No. 67.)   The Settlement Agreement stipulated, among other things, that WF Electric and Larsen Electric were bound by the 2005 Bargaining Agreement, that WF Electric and Larsen Electric timely withdrew collective bargaining representation from NECA and timely terminated the 2005 Bargaining Agreement, that Larsen Electric was the alter ego of WF Electric for purposes of resolving the grievances asserted, and that the parties would submit to the grievance procedures provided by the bargaining agreements.  The court accepted the stipulation and an order dismissing the Prior Lawsuit on the merits and with prejudice was entered on November 8, 2007. (2:05-cv-955 Dkt. No. 68.)  The record does not contain any evidence of how the parties' claims were addressed in the collective bargaining agreements grievance procedures.

On July 16, 2009, Local 354 and the Pension Fund jointly filed the present action, again naming WF Electric and Larsen Electric as defendants and adding Scott Larsen, individually, as an additional defendant. In the Second Amended Complaint, dated November 8, 2011, the Pension Fund alleges that it is bringing the action as a fiduciary to collect delinquent contributions in accordance with the terms and provisions of "certain Collective Bargaining Agreements and Trust Agreements," pursuant to ERISA, 29 U.S.C. § 1145, and to recover withdrawal liability under 29 U.S.C. Section 1381 *et seq.*   The "certain Collective Bargaining Agreements" alleged in the present action are the same 2003 and 2005 Bargaining Agreements alleged in the Prior Lawsuit.

In their First Claim, the Plaintiffs, without distinguishing between Local 354 and the Pension Plan, allege that "Defendants have failed to report and pay employee benefit plan contributions and working assessments to Plaintiffs in violation of the applicable Collective Bargaining Agreements, Trust Agreements and 29 U.S.C. §1145 of ERISA."  (Dkt No. 205, ¶ 33.) Plaintiffs challenge WF Electric's ability to terminate its obligations under the then-existing Collective Bargaining Agreement with Local 354 and seek judgment for $1,486,707.37 in benefit plan contributions and working assessments.

In the Second Claim, "Plaintiff" seeks $256,414.68 as withdrawal liability, plus interest costs and attorneys fees.   Plaintiffs fail to identify which of the Plaintiffs is asserting the Second Claim.

In the Third Claim, Plaintiffs incorporate by reference all prior allegations and further allege that Scott Larsen should be held "personally liable to Plaintiffs for the employee benefit contributions, working assessments, and withdrawal liability that is owed by WF/Larsen Electric . . . ."  (Dkt No. 205, ¶ 49.)  In the Third Claim, Plaintiffs also fail to distinguish whether Local 354 or the Pension Plan is bringing the claim.  At trial and in their proposed Conclusions of Law, it became

clear that Plaintiffs seek to have both Scott Larsen and Larsen Electric found liable as alter egos of WF Electric.  (Dkt No. 255, 17-24.)

After trial, Plaintiffs reduced the amount they seek to $993,743.91 in contributions to the Pension Fund, $97,205.43 in working assessments to Local 354, and $256,414.68 in withdrawal liability, plus interest, costs and attorneys fees.  (Dkt No. 255, p. 15-16, ¶¶ 97, 102, and 103.)


## ANALYSIS AND CONCLUSIONS OF LAW

I.   **PLAINTIFFS' CLAIMS FOR DELINQUINT CONTRIBUTIONS, WORKING ASSESSMENTS AND ALTER EGO ARE BARRED UNDER THE DOCTRINE OF *RES JUDICATA*.**

Defendants argue that Plaintiffs are barred from bringing this action under the affirmative defense of *res judicata*.  "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) (quotation marks omitted).  Claim preclusion in the Tenth Circuit applies when three elements are met: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).  The court finds that for the First, Second and Third Causes of Action alleged in the Second Amended Complaint each of these elements has been satisfied. Each element will be addressed in turn.

### A.   The Prior Lawsuit Ended in a Final Judgment on the Merits

It is undisputed that pursuant to the parties' Settlement Agreement, on November 8, 2007 the court in the Prior Lawsuit entered an order dismissing with prejudice Local 354's claims against WF Electric and Larsen Electric.  (2:05-cv-955 Dkt. No. 68.)  The complaint in the Prior Lawsuit expressly alleged and prayed the court to declare that Larsen Electric was the alter ego of WF

Electric. Indeed, that was the very issue set for trial by the court's order denying summary judgment. Based upon this Settlement Agreement, the parties agreed to submit to the grievance process of the 2005 Bargaining Agreement and the court retained jurisdiction to enforce the agreement. The order of dismissal expressly stated that it was with prejudice and on the merits. It is well established that a dismissal with prejudice pursuant to a settlement is a final judgment on the merits. *Yapp v. Excel Corporation*, 186 F.3d 1222, 1230 (10th Cir. 1999.) This element of claim preclusion is met.

### B. Local 354 and The Pension Fund Are in Privity.

Since it was the named plaintiff in the Prior Lawsuit, this element is clearly met as to Local 354. The Pension Fund, however, did not appear as a named plaintiff in the Prior Lawsuit and Plaintiffs argue that fact prevents at least it from being barred by the order of dismissal. The Defendants respond that the Pension Fund should be barred from this action because it was privy with Local 354.

"It is a fundamental rule of civil procedure that one who was not a party to an action is not bound by the judgment." *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996). The Supreme Court, however, has recognized six exceptions to this rule. *See generally, Taylor v. Sturgell*, 553 U.S. 880, 894 (10th Cir. 2008). Of particular importance to this case is the third exception, which is that "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who was a party' to the suit," such as "properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." *Id.* The Tenth Circuit has further explained this exception as applying "when a party who did not take part in litigation, as a way of avoiding preclusion, later sues as the designated representative of a person who was a party to the earlier suit . . . ." *Pelt v. Utah,* 539 F.3d 1271, 1282 (10th Cir. 2008).

One of the factors the court considers in determining if a non-party is in privity with the party in the prior action is whether there was adequate representation of the parties' interests. The Tenth Circuit quoted from *Taylor* as follows:

> A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative were aligned; (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the non-party. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented.

*Pelt,* 539 F.3d 1271, at 1282 (citations omitted).

Other courts, in explaining the factors to be considered in whether there is an identity of parties, or privity, have provided additional factors to be considered. In *Meagher v. The Board of Trustees of the Pension Plan of the Cement and Concrete Workers District Pension Fund*, 921 F. Supp. 161 (S.D.N.Y. 1995), *aff'd* 79 F.3d 256 (2d Cir. 1996), the plaintiff sued as an individual in the first action, and following dismissal on the merits, sued in a second action claiming to act as a representative for the pension fund. The court held that the second action was barred by *res judicata.* The plaintiff argued that the second action should not be barred because he was acting in a representative capacity and the general rule is that where a party appears in one action as an individual and in the second action as a representative, it is not bound by the prior action. The court rejected the argument, noting that "the general rule does not apply where the representative is also one of the 'beneficiaries' of the subject matter of the action." 921 F. Supp. at 165. The court explained that the issue is governed by whether the party is litigating the same rights in both actions. Whether the rights being litigated are the same is informed by whether the plaintiff "would be [an] ultimate beneficiary of the relief he requests on behalf of the plan . . . ." 921 F. Supp. at 166.

Had the Pension Fund been a named plaintiff in the Prior Lawsuit, there would be little to dispute the conclusion that it would be bound by the judgment in the Prior Lawsuit as would Local

354 which represents the same beneficiaries as the Pension Fund.  Indeed, the precedence is clear that a beneficiary of a trust is barred from litigating an action already brought by a trustee.  *See Richards*, 517 U.S. at 798 (stating that "a judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust"); *see also, Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 593-94 (1974) (stating that "beneficiaries are bound by the judgment with respect to the interest which was the subject of the fiduciary relationship").  In this case, however, Local 354, acting as the representative of its members, brought suit in the Prior Lawsuit.  The union members were the ultimate beneficiaries of the relief being sought in the Prior Lawsuit.   In the present action, the ultimate beneficiaries of the relief being sought are also the union members.   The Pension Fund alleges that it is the collection agent for the various Trust Funds.   The Trust Funds exist to benefit the union members.  Any relief that were to be awarded in the present action would be to the benefit of the same members for whom relief was sought in the Prior Lawsuit.

Moreover, the rights the Plaintiffs in the present action seek to enforce, without Plaintiffs distinguishing whether those rights are asserted on behalf of Local 354 or the Pension Fund, are the obligations arising from the 2003 and 2005 Bargaining Agreements.  Larsen Electric and ultimately Scott Larsen can be held liable only if they are found to be bound by those collective bargaining agreements.  The interests of Local 354 in the Prior Lawsuit and the interests of the Plaintiffs in this action, again asserted by Local 354 and the Pension Fund without distinguishing who owns those rights, are aligned.  Indeed, Local 354 is the named contracting party in both collective bargaining agreements.  Neither Local 354 nor the Pension Fund can prevail against Larsen Electric or Scott Larsen unless the rights created in the collective bargaining agreements are enforceable against them.  The enforceability of those same collective bargaining agreements against Larsen Electric was the very claim asserted in the Prior Lawsuit.  The court finds, as a conclusion of law, that Local

354 and the Pension Fund are in privity in this action in which they both seek to enforce those same rights.

In coming to this conclusion, the court makes several observations.  First, as the court has concluded, the parties in these two actions are "really and substantially in interest the same." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989).  In giving context to what this phrase means, the Tenth Circuit has previously rejected finding privity under Utah law based upon some simple common interest of two litigants in a particular resolution, preferring to focus on whether the "same legal rights" are actually at issue. [2]  *See Century Indem. Co. v. Hanover Ins. Co.*, 417 F.3d 1156, 1160 (10th Cir. 2005) (finding that although a common preferred judgment existed for an insurance company and its insured that would further both of their interests, the fact that the two took opposing positions on the merits demonstrated a lack of privity between the two for purposes of *res judicata*).[3]  Indeed, under Utah law, "the legal definition of a person in privity with another, is a person so identified in interest with another that he represents the same legal right.  Thus, privity depends mostly on the parties' relationship to the subject matter of the litigation."  *Century Indem. Co.*, 417 F.3d at 1159 (citing *Press Publ'g, Ltd. v. Matol Botanical Int'l, Ltd.*, 2001 UT 106, 37 P.3d 1121, 1128 (Utah 2001)).  What is clear in this case is that the

---

[2]     The Tenth Circuit has previously noted: "As a general rule we apply federal law to the res judicata issue in successive diversity actions, but federal law will incorporate state law when the issue is more distinctly substantive, as with the concept of 'privity.'"  *Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989).  Accordingly, the court will apply Utah law in determining whether the plaintiffs in the two cases are privies.

[3]     In *Century*, two insurers (Century and Pacific), acting through their insured Mountain States, brought a subrogation action against Voest-Alpine Services & Technologies Corporation ("VAST") claiming that VAST was obligated to defend and indemnify Mountain States in the personal injury action brought against Mountain States.  *Id.*  The district court found that VAST was barred by a waiver of subrogation.  *Century*, 417 F.3d at 1160.  The state court found in favor of VAST, concluding that the insurance companies' claims were barred by a waiver of subrogation.  *Century*, 417 F.3d at 1157.  Before the state court proceedings had concluded, however, Century and Pacific sued VAST's insurers in federal court seeking contributions from VAST's insurers for sums that Century and Pacific had paid to settle the original personal injury claim.  *Id.*  The district court found for VAST's insurers.  On appeal, VAST's insurers (who were not a party to the original suit) argued that the claim against them was barred as *res judicata* because they were in privity with VAST in the original action as demonstrated by the fact that both VAST and its insurers would escape liability if the insurance companies' claims against VAST failed.  *Id.* at 1160.  The Tenth Circuit rejected this claim, noting that although a common preferred judgment existed, the fact that VAST's position that it had complied with its contractual obligations in getting insurance was contrary to its insurer's position that no obligation existed to defend the insurance companies.  *Id.* 1161.

Pension Fund and Local 354 both have a legal interest or right in recovering contributions believed owed by Defendants under the 2003 and 2005 Bargaining Agreements.  Local 354 sued to enforce those rights in the Prior Lawsuit.  Any judgment in the Prior Lawsuit or in the present suit would result in monies being paid for the benefit of the union members pursuant to obligations arising from those agreements.

Second, the Pension Fund, as a practical matter, has long been involved in this litigation.  Rich Kingery is Local 354's business manager (or principal officer) and also one of the trustees (and chairman) of the Pension Fund.   As it pertains to this lawsuit, one of the trustees of the Pension Fund has consistently been Local 354's business manager, whether Rich Kingery or a predecessor, as required under Local 354's constitution that the business manager is seated "as the trustee."  (Tr. 41:18-25, 42:17-43:1, 69:14-70:3.)  Thus, the Pension Fund has been well aware of the claims it attempts to assert in the present action since the inception of the Prior Lawsuit.  (Tr. 420:1-25.)  Furthermore, Mr. Kingery also testified that after July 2007, prior to the settlement of the Prior Lawsuit in November 2007, the Pension Fund trustees were present at meetings in which they discussed the present lawsuit filed by Local 354 against WF Electric and that Mr. Kingery was the business manager for Local 354 during the time the decision was made to dismiss the Prior Lawsuit.  (Tr. 411:2-418:10).  The Pension Fund trustees were aware of the Prior Lawsuit, its objectives and how it was resolved.  (Tr. 420:23-422:23.)  The Pension Fund has therefore had ample opportunity to assert its claims.  The fact that the Pension Fund trustees originally decided not to file suit, but have since changed their minds, is of no moment.

Third, permitting a trustee to bring suit after its beneficiary failed to do so successfully would create a path for abusive litigation whereby two colluding parties could attempt to avoid a detrimental judgment by later re-litigating the same issue through a proxy, albeit a fiduciary.  To do so would result in the inequitable consequence of permitting two cooperating parties to attempt two

11

bites at the very same apple.  *See Taylor*, 553 U.S. at 895 (stating that the fifth exception to barring nonparties from bringing subsequent cases is that "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy . . . [as well as] a nonparty later bring[ing] suit as an agent for a party who is bound by a judgment)."

The fact that the objectives in the Prior Lawsuit were to achieve the same benefits as the present suit for the benefit of the same ultimate beneficiaries supports the conclusion that there was a unity of interest.  This unity is made clear by the fact that the business manager for Local 354 acted as a trustee of the Pension Fund at all times relevant to both actions.  Indeed, he was fully informed of the actions being taken, knew the claims being made and participated in the decisions to bring the actions.  It would be difficult to conceive of a relationship where two entities could be more closely aligned in the decisions being made and the benefits to be gained upon a successful completion of the Prior Lawsuit.  To fail to recognize this unity of interest would in effect allow the same beneficiaries two chances to obtain effectively the same relief.  Such a result would be inconsistent with the objectives of the claim preclusion doctrine.  Therefore, the court finds, as a conclusion of law, that Local 354 and the Pension Fund are "really and substantially in interest the same."  *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008).[4]

### C. The Identity of the Cause of Action in Both Suits

The Tenth Circuit has adopted the transactional approach in determining what constitutes identity of the causes of action, explaining:

---

[4]     At least one other court has applied this logic to a very similar case.  In *Service Employees Int'l Union Local 1 v. Digby's Detective and Security Agency, Inc.*, the district court considered the defendant's motion for summary judgment, which argued that the plaintiff union was barred from asserting a breach of contract action for unpaid contributions where the transaction had already been litigated in a prior lawsuit by a pension trust.  2009 U.S. Dist. LEXIS 21588 at *2-3 (N.D. Ill. March 18, 2009).  In applying the "functional approach" analysis, the court considered whether the parties in the two suits could be exchanged for one another with their interests remaining sufficiently represented.  *Id.*, at *7 (citing *Tice v. American Airlines*, 162 F.3d 966, 971-72 (7th Cir. 1998)).  The court then considered that although "nominally different, the legal effect of any judgment [would] be that the defendant will have to pay the monies to the Trust."  *Id.* at *8 (citing *Chicago Dist. Council of Carpenters Pension Fund v. Pientka, No. 84 C 6307*, 1985 U.S. Dist. LEXIS 23869 (N.D. Ill. Aug. 8, 1985)).

> [A] claim arising out of the same transaction, or series of connected transactions as a previous suit, which concluded in a valid and final judgment, will be precluded . . . . What constitutes the same transaction or series of transactions is to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Yapp v. Excel Corporation*, 186 F.3d 1222, 1227 (10th Cir. 1999) (citations omitted).

The Tenth Circuit has further stated that a contract, such as a collective bargaining agreement, "is generally considered to be a 'transaction,' so that all claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action." *May v. Parker-Abbott Transfer & Storage*, 899 F.2d 1007, 1010 (10th Cir. 1990) (citations omitted).[5]

In the Prior Lawsuit, Local 354 alleged in its complaint against WF Electric and Larsen Electric that "[t]his is a suit to enforce a collective bargaining agreement and to compel arbitration under the agreement."   Indeed, the Union's prayer for relief was that WF Electric and Larsen Electric be declared "alter ego companies for purposes of the Labor-Management Relations Act," that both be declared parties to the bargaining agreements and that they both be compelled to arbitrate their alleged violations of "each and every term and condition of the collective bargaining agreement."  (2:05-cv-955 Dkt. No. 1 at 1, 5-6)  The relief being sought in the present actions arises from the same conduct alleged in support of the Prior Lawsuit based upon legal obligations arising from the same bargaining agreements.  In this action, Plaintiffs allege the suit "is brought by the Pension Fund as fiduciaries to collect delinquent Trust Fund contributions in accordance with the terms of provisions of certain Collective Bargaining Agreements and Trust Agreements pursuant to 29 U.S.C. § 1145, and to recover withdrawal liability pursuant to 29 U.S.C. Section 1381 et seq."

---

[5]      This language has been interpreted broadly.  In maintaining a previous decision in *Clark v. Haas Group, Inc.*, 953 F.2d 1235 (10th Cir. 1992), the *Yapp* Court noted that claims of unpaid overtime compensation and wrongful termination were based upon a single transaction – the employment relationship.  *Yapp*, 186 F.3d at 1228.

(Second Am. Compl., 2) (Dkt No. 205).[6]  Indeed, the claims in the Prior Lawsuit and the present action are identical insofar as they both seek to remedy an alleged breach of duties arising because the Defendants should be bound by the terms of the collective bargaining agreements.

Plaintiffs argue that the causes of action are not identical because while the claims in the Prior Lawsuit arose from the collective bargaining agreements, the claims in the present action arise under federal statute, citing to *Amaro v. The Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984).  In *Amaro*, the employees' union filed a grievance against the defendant employer for firing employees in violation of the collective bargaining agreement.  *Id.* at 748.  That litigation was resolved by an arbitrator in the defendant's favor.  Soon after, the employees themselves filed a second action addressed by the court in *Amaro* alleging violations under *ERISA* for laying employees off to prevent them from obtaining the number of years of continued service needed to qualify for the defendant's pension benefit and employee welfare plans.  *Id.*  The Ninth Circuit held that the second action was not barred under *res judicata* because the statutory claim was not for benefits under a collective bargaining agreement, but rather a federal cause of action that protected employees from actions which interfered with their attainment of eligibility for protected benefits.  *Id.* at 749 ("We are persuaded that in enacting [ERISA § 510], Congress created a statutory right independent of any collectively bargained rights.").

Based on this reasoning, Plaintiffs in the present case argue that *res judicata* should not be applied because the Prior Lawsuit brought by Local 354 was only based upon the collective bargaining agreements, while the second brought by the Pension Fund was based solely upon federal statute under ERISA, 29 U.S.C. 1145.  (Tr. 432:15-25.)  Plaintiffs' attempt to extend the

---

[6]      Plaintiffs explain that the three pertinent agreements are the June 1, 2003 – May 31, 2005 Inside Wireman Small Works Agreement; the June 1, 2003 – May 31, 2005 Inside Wireman Agreement; and the June 1, 2003 – May 31, 2007 Small Works Agreement.  (Dkt. No. 255, 3.)

logic of *Amaro* to this case is rejected[7].  *Amaro* specifically decided that the statutory claim was premised on prohibiting "anyone from interfering with the attainment of any rights to which a person may become entitled under the provision of an employee benefit plan that falls within the coverage of ERISA."  *Amaro*, 724 F.2d at 749.  In other words, the second action was not focused on the breach of the collective bargaining agreement, but an independent interference of the employees' rights.  In contrast to *Amaro*, and counsel's contention at trial, the Pension Fund's claims here are only indirectly based upon federal statute.  Rather, the claims are focused on collecting "delinquent Trust Fund contributions in accordance with the terms and provisions of certain Collective Bargaining Agreements and Trust Agreements . . . ."  (Second Am. Compl., ¶ 4.) Thus, the actions were based upon alleged breaches of the agreements, not obligations created by statute.  The fact that it was brought "pursuant to 29 U.S.C. § 1145 [and] § 1381 et seq" does not change this conclusion.  (Second Am. Compl., ¶ 4.)  Section 1145 reads:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in **accordance with the terms and conditions of such plan or such agreement.**

29 U.S.C. § 1145 (emphasis added).  Thus, the terms and conditions are set by the agreements, not by the statute, and it is those terms which Plaintiffs sought in both actions to enforce.

In contrast to *Amaro*, Section 1145 does not provide a cause of action for a legal right separate and apart from a standard breach of contract claim.  Rather, it brings a particular type of contract under the protection of federal law, thereby providing access to the federal courts.  If this were not so, and Plaintiffs were correct that the statute provides a different legal right from the collective bargaining agreement itself, the result would be to afford double recovery under the same contract, for the same harm.  Nothing suggests that this was Congress' intent.  Plaintiffs' contention

---

[7] The result in *Amaro* has been criticized and often not followed by later cases.  *See, e.g., Bird v. Shearson Lehman/American Express,* 926 F.2d 116, 120-21 (2d Cir. 1991); *Simon v. Pfizer, Inc.,* 398 F.3d 765 (6th Cir. 2005).

that the two actions raise separate claims is therefore rejected.  Indeed, the claims Plaintiffs attempt to re-litigate in the present action parallel the same attempt the plaintiff made in *Yapp*.  In that case, the plaintiff sued in federal court under the Fair Labor Standards Act, seeking compensation for unpaid overtime.  *Yapp,* 186 F.3d at 1225.  Shortly after filing the federal action, the plaintiff also sued the same defendant in state court, claiming breach of his employment contract and other state causes of action.  The defendant removed the state action to federal court and moved to consolidate it with the overtime claim.  The court denied the motion to consolidate.  Thereafter the parties settled the overtime claim and, pursuant to the settlement agreement, the court dismissed the claim with prejudice.  The defendant then moved for summary judgment on the removed state claims, arguing they were barred by the doctrine of claim preclusion.  The court granted the motion, dismissing the case.  On appeal, the court affirmed, concluding that the claims in both actions arose from the same transaction and that "transaction" was plaintiff's employment. The fact that the overtime claims were brought under the Fair Labor Standards Act did not create a separate set of rights arising from a different transaction.  Similarly, in the present case and in the Prior Lawsuit the claims all arise from duties imposed by the 2003 and 2005 Bargaining Agreements and conduct Plaintiffs allege breached those duties.

Plaintiffs' argument that the present lawsuit is brought under Section 1145 does not change the fact that the claims in both actions arise from the same transaction.  The alleged conduct in both cases is the same and constitutes the same transaction as defined by the court in *Yapp.*  Pursuant to the settlement agreement, all claims that WF Electric and Larsen Electric violated the bargaining agreements were to be resolved through the grievance procedure set forth in those agreements.   The Plaintiffs are not allowed to return to federal court to assert violations of those same agreements because of their dissatisfaction with the outcome of that process. *See Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) ("[A] final judgment

on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action.") (citations omitted) (emphasis added); *see also May*, 899 F.2d at 1010 ("[A]ll claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action.") (citations omitted).

Because the elements of *res judicata* are met, the court finds, as a conclusion of law, that the Plaintiffs' claims seeking to enforce the terms of the bargaining agreements are barred.

## II.   THE PLAINTIFFS' CLAIMS FOR WITHDRAWAL LIABILITY ARE ALSO PRECLUDED.

The same analysis that requires dismissal of the claims for delinquent contribution, working assessments and alter ego requires dismissal of the claims for withdrawal liability.  Plaintiffs assert the withdrawal claim under 29 U.S.C. § 1381.  That section provides in part that if an employer withdraws from a multiemployer plan "then the employer is liable to the plan in the amount determined under this part to be withdrawal liability."  In response to Plaintiffs' motion for partial summary judgment, WF Electric conceded liability under this section and the court previously entered summary judgment against it. (Dkt No. 178).  Under Rule 54(b) of the Federal Rules of Civil Procedure, that order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  For the reasons set forth herein, the court concludes that the Second Claim against all Defendants is barred by *res* judicata.  WF Electric was defendant in the Prior Lawsuit.  Local 354 and its privy, the Pension Plan, sought to enforce rights arising from the 2005 Bargaining Agreement.  Any claim for withdrawal liability could and should have been brought in that lawsuit, and is, as a consequence, barred. The order granting partial summary judgment on the Second Claim For Relief against WF Electric is vacated and the Second Claim against WF Electric is dismissed with prejudice.

The only remaining questions are whether Larsen Electric and Scott Larsen, as an individual, can nevertheless be found to be "an employer" under this section. "Employer" is defined in 29 U.S.C. § 1002(5) to mean "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."   Plaintiffs argue that the definition is supplemented by 29 U.S.C. § 1301(b)(1) which refers to regulations to determine if separate businesses "which are under common control shall be treated as employed by a **single employer**" (emphasis added).   The regulations propose various tests as indications that several businesses are under common control, all directed at determining whether they are to be deemed to be a "single employer."   Plaintiffs argue that the evidence at trial compels a finding that Larsen Electric and Scott Larsen must both be found to be a "single employer" with WF Electric.   The court, however, need not reach that issue because the withdrawal claim is precluded by the dismissal with prejudice of the Prior Lawsuit.

WF Electric's liability under § 1381 arises only because it became an employer with duties and obligations owed under the 2005 Bargaining Agreement.   Outside of that agreement, it had no obligation to make withdrawal payments to the Plaintiffs.   The Prior Lawsuit put at issue all duties arising under the bargaining agreements and, specifically alleged that Larsen Electric was bound by those agreements as the alter ego of WF Electric.   Indeed, in the Prior Lawsuit, the Local 354 expressly alleged:  "The principals of WF Electric formed an alter ego corporation within the meaning of national labor law; Larsen Electric."  (2:05-cv-0955 Dkt. No. 1, ¶ 11).  Moreover, Local 354 expressly alleged that the conduct upon which it based its claim was efforts to "both untimely and ineffectively withdraw WF Electric from NECA; to cancel its existing Letters of Assent; or to negate WF Electric's status as a party to the 2005-2007 collective bargaining agreement.  As a result, WF Electric and its alter-ego, Larsen Electric, are bound by the June 1, 2005 through May

18

31, 2007 collective bargaining agreement." (2:05-cv-0955 Dkt. No. 1, ¶ 18).  And in the prayer, Local 354 sought this very relief:  "judgment in its favor and against defendants . . . [d]eclaring WF Electric and Larsen Electric to be alter ego companies for purposes of the Labor-Management Relations Act." (2:05-cv-0955 Dkt. No. 1, 5).  That Plaintiffs at the time of Prior Lawsuit understood and intended the suit to resolve the question of whether Larsen Electric was to be deemed a single employer with WF Electric is further made clear by its argument to the prior court in its motion for partial summary judgment.  In its statement of proposed undisputed facts, Local 354 asserted:  "On or about May 4, 2005, Local 354 sent an inquiry to WF Electric alleging that there was an alter ego or **single employer relationship** between WF Electric and Larsen Electric, and requesting certain information in regard to the relationship between the companies."  (2:05-cv-0955 Dkt. No. 36, ¶ 15)(emphasis added).

These facts lead to the conclusion that any claim by Plaintiffs for withdrawal liability arose only because WF Electric was a party to the 2005 Bargaining Agreement.  The issues of the rights and obligations arising as a result of WF Electric being a party to that agreement were at issue in the Prior Lawsuit.  The claims included expressly the allegation that WF Electric and Larsen Electric were an "alter ego or single employer relationship."  The order dismissing the Prior Lawsuit with prejudice resolved all claims that were or could have been brought in that action.  The claims in the Prior Lawsuit arose from the same transaction that serves as the basis for the claims Plaintiffs assert in the present lawsuit.  The court finds, as a conclusion of law, that under the doctrine of claim preclusion as articulated in *Yapp*, all claims that were or could have been brought in the Prior Law Suit are barred.  186 F.3d 1222, 1227 ("The transaction approach provides that a claim arising out of the same 'transaction, or series of connected transactions' as a previous suit, which conclude in a valid and final judgment, will be precluded.")

III.    **THE CLAIM TO HOLD SCOTT LARSEN LIABLE AS AN ALTER EGO IS ALSO PRECLUDED.**

Scott Larsen, as an individual, was not named as a defendant in the Prior Lawsuit. Nevertheless, the court finds, as a of law, that Plaintiffs' claims to hold him liable under the 2003 and 2005 Bargaining Agreements and for withdrawal liability are also barred by claim preclusion. It is undisputed that Scott Larsen was the 100% owner of Larsen Electric and its sole manager.  It was his actions that Local 354 challenged in the Prior Lawsuit.  He had a unity of interest with Larsen Electric and was, for purpose of claim preclusion analysis, in privity with Larsen Electric. Thus, the contribution, working assessment, alter ego and withdrawal claims could have been asserted against him in the Prior Lawsuit and are, therefore, barred in the present action.   *See Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action.") (citations omitted) (emphasis added); *see also May*, 899 F.2d at 1010 ("[A]ll claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action.") (citations omitted).

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs' First Claim for Relief (Delinquent Contributions), Second Claim For Relief (Withdrawal Liability) and Third Claim for Relief (Alter Ego) against all Defendants are **DISMISSED WITH PREJUDICE**.  In light of the court's ruling, the Plaintiffs are ordered to show cause on or before June 22, 2012 why the Fifth Claim for Relief should not also be dismissed with prejudice.  If Defendants wish to respond to the Plaintiffs' memorandum, any such response must be filed on or before July 6, 2012.

DATED this 8th day of June, 2012.

BY THE COURT:

Clark Waddoups
United States District Judge